AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

At Albuquerque NM
FILED
OCT 17 2018

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Justin Riley Brafford | ) | Case No. 18-MJ-3362 |
| | ) | |
| | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __10/16/2018__ in the county of __Bernalillo__ in the _____ District of __New Mexico__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 46 U.S.C. § 46501, 46504, & 46506 | Interference with a flight crew. |
| 18 U.S.C. § 113(a)(5) | Simple Assault. |

This criminal complaint is based on these facts:
See attached afidavit

☐ Continued on the attached sheet.

_____
Complainant's signature

Dannie W. Price, Jr.  Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: October 17, 2018

_____
Judge's signature

City and state: Albuquerque NM

KAREN B. MOLZEN
U.S. MAGISTRATE JUDGE
Printed name and title

STATE OF NEW MEXICO )
                    ) SS
COUNTY OF BERNALILLO)

## AFFIDAVIT

I, Dannie W. Price, Jr., Special Agent, Federal Bureau of Investigation, being duly sworn, state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI), United States Department of Justice. I have been so employed for approximately nine years. During my course of employment I have investigated and received special training in violations involving violent crimes, violent street gangs, firearms violations, and drug violations.

2. I am responsible for investigating crimes that involve, among other things, Interference with a Flight Crew (49 U.S.C. § 46504), and Simple Assault (18 U.S.C. § 113(a)(5)).

3. The information in this Affidavit is drawn from my interview of the defendant, information received from other law enforcement agents/officers, my experience and training, and the experience of other agents. Because of the Affidavit's limited purpose, it does not contain all of the facts I know about this investigation.

4. Finally, the summaries of conversations do not include all potentially criminal conversations recorded during this investigation, or all statements or topics covered during the course of the recorded conversations. They do not represent finalized transcripts and may not represent the entire conversation that occurred between the identified individuals.

5. Based on the information contained in this Affidavit, I submit that there is probable cause to believe that: (1) on or about October 16, 2018, JUSTIN RILEY BRAFFORD, on an aircraft in the special aircraft jurisdiction of the United States, to wit, Southwest Airlines Flight

1

859 bound to Dallas, Texas, from Los Angeles, California, intimidated flight crew member(s) and flight attendant(s) of the aircraft, and interfered with and lessened the ability of those individuals to perform their duties, in violation of Title 49, United States Code, Sections 46504, 46506, and 46501(2) (Count One); and (2) on or about October 16, 2018, JUSTIN RILEY BRAFFORD, within the special aircraft jurisdiction of the United States committed Simple Assault, in violation of Title 46, United States Code, Sections 46501 and 46506 and Title 18, United States Code, Section 113(a)(5) (Count Two).

### A.   October 16, 2018, Southwest Airlines flight 859

6.   On October 16, 2018, while on Southwest Airlines flight 859 bound to Dallas Texas, from Las Angeles California, JUSTIN RILEY BRAFFORD assaulted VICTIM M.W. and intimidated the flight crew and flight attendants causing the flight to divert from its planned route to Dallas, Texas and land in Albuquerque, New Mexico.

7.   According to M.W., who was seated in an aisle seat, BAFFORD approached her after boarding the plane and asked if he could sit next to her in the middle seat between her in and another female passenger.  As the plane was preparing for takeoff, BRAFFORD began to lean closer to her seat with his arm over her arm rest and on her leg.  M.W. attempted to ignore BRADFORD by leaning into the aisle, away from him.

8.   According to M.W., BRAFFORD got closer to her and began "playing footsies" with her and almost kicked her, trying to get her attention.  BRAFFORD asked M.W. if he was bothering her.  M.W. advised yes and asked BRAFFORD to stop kicking her.

9.   According to M.W., BRAFFORD continued to kick her, got closer to her and began to pull on her sweater while asking her "what did you say?"  M.W. told BRAFFORD that she did

not say anything to him. BRAFFORD asked M.W. where she lived, if she was staying alone in her hotel room, and what her name was. When told that she was with co-workers, BRAFFORD asked if they were on the plane and if she would go out with him. M.W. declined the invitation and advised that she was busy. During this time, BRAFFORD would also whisper "Don't fuck with me" to M.W.

10. M.W. asked a flight attendant to change her seat. The flight attendant agreed to change her seat and also moved her personal belongings for her.

11. VICTIM/WITNESS C.K. is a flight attendant for Southwest Airlines and was working on October 16, 2018, on Southwest Airlines flight 859 in the section occupied by BRAFFORD and M.W.

12. According to C.K., he believed BRAFFORD and M.W. were a couple due to how close BRAFFORD was to M.W. C.K. observed BRAFFORD put his head on M.W.'s shoulder and was in M.W.'s personal space. As C.K. was delivering drinks to passengers, M.W. asked him if there was another seat available because the guy next to here was making her feel uncomfortable. C.K. requested M.W. meet him in the rear of the plane near the lavatories. Once in the rear of the plane, M.W. complained that BRAFFORD was asking her out, touching her and rubbing her feet with his.

13. According to C.K., he changed her seat, and after doing so, M.W. requested that C.K. get her personal belongings from her original seat because she did not feel comfortable going back there. C.K. retrieved M.W.'s items, (two bags, a drink, and a laptop), and brought them to her new seat. C.K. then offered M.W. a complimentary beverage which she accepted.

14. According to C.K., when he returned to deliver M.W. her complimentary beverage, M.W. was crying and informed him that BRAFFORD had come to her new seat and

3

confronted her. C.K. approached BRAFFORD, who was sitting in M.W.'s old seat and informed him to "leave it alone." C.K. advised that he spoke to BRAFFORD in a quiet voice as to not disturb the nearby passengers. BRAFFORD reacted by standing up and yelling at C.K. C.K. believes he was saying variations of this is not happening, we're not doing this, and this is not "fucking" going on. BRAFFORD was yelling and used the word "fuck" a lot. The entire incident took approximately thirty seconds.

15. According to C.K., BRAFFORD was not acting like a normal person and seemed to have gone from "zero to sixty in nano-seconds." He believed BRAFFORD was possibly on drugs. Since BRAFFORD was displaying erratic behavior, and had already touched an unwilling passenger, C.K. became intimidated and believes the passengers in the immediate area were also intimidated by BRAFFORD.

16. According to C.K., other flight attendants noticed what was happening. One flight attendant advised C.K. to "back up" and stood behind him during the confrontation while the other flight attendant utilized the telephone in the rear of the plane to make contact with the pilot and inform him of what was going on.

17. According to C.K., the pilot could hear the yelling through the telephone. C.K. did not yell back, but continuously informed BRAFFORD to sit down. After BRAFFORD complied and sat down, C.K. went to the rear of the plane and spoke with the pilot on the phone. The pilot asked C.K. if he thought they needed to divert the flight to a closer airport. C.K. advised that he believed they needed to divert the flight and remove BRAFFORD from the plane before anything else happened. The pilot agreed to divert the plane. During the remainder of the flight, C.K. and the other flight attendants prepped their restraints and had a blanket ready just in case BRAFFORD caused another problem and needed to be restrained. The flight landed in

Albuquerque, New Mexico, without additional incident.

18. According to C.K., their arrival to Dallas, Texas, as well as their following two flights were delayed by an hour and a half, there were connecting passengers that had to be re-accommodated to other connecting flights from Dallas, Texas, and passengers who could not be re-accommodated in Dallas, Texas, had to be re-accommodated to connecting flights in Albuquerque, New Mexico as a direct result of the incident involving BRAFFORD.

19. According to C.K., of M.W. cried for a while after the incident and was crying while she spoke with the police. She felt guilty for delaying the flight for the other passengers and felt she had done something wrong.

20. According to BRAFFORD, who provided an audio recorded statement after being read his Miranda Rights and agreeing to waive his rights, he was sitting in the middle seat next to M.W.. He and M.W. were watching videos on M.W.'s computer. M.W. had put her arm on top of his as they watched videos and BRAFFORD believed she may have been flirting with him. BRAFFORD then began to nudge M.W.'s leg to get her attention. M.W. initially ignored BRAFFORD but then acknowledged him by telling him to stop kicking her. BRAFFORD asked M.W. what she had said. M.W. told him that she had not said anything. BRAFFORD then told M.W., "You're fucking with me". BRAFFORD said he felt like they were connecting and decided to put his hand on the side of M.W.'s leg, but felt like he went too far, may have misread the situation and removed it.

21. According to BRAFFORD, M.W. got up and he asked her if she was moving. M.W. told him no and said she was going to the restroom. BRAFFORD later noticed that M.W. had changed seats. BRAFFORD approached M.W. at her new seat and told her that if he was bothering her, all she needed to do was tell him. He then returned to his seat. After sitting down,

5

BRAFFORD was approached by a flight attendant and told to "leave the girl alone." BRAFFORD said that he was not messing with the girl and told the flight attendant "you leave me the fuck alone." BRAFFORD then addressed all the passengers around him and said, "as a matter of fact, all you guys leave me the fuck alone." BRAFFORD then sat down and stayed quiet the rest of the flight.

22. According to BRAFFORD, he had used methamphetamines the day before his flight and had overdosed on heroin on October 13, 2018. He also was receiving "calls" while on the plane and later explained that "calls" meant that God was talking to him.

23. Based on the foregoing, your Affiant respectfully believes that there is probable cause to believe that: (1) on or about October 16, 2018, JUSTIN RILEY BRAFFORD, on an aircraft in the special aircraft jurisdiction of the United States, to wit, Southwest Airlines Flight 859 bound to Dallas, Texas, from Los Angeles, California, intimidated flight crew member(s) and flight attendant(s) of the aircraft, and interfered with and lessened the ability of those individuals to perform their duties; in violation of Title 49, United States Code, Sections 46504, 46506, and 46501(2) (Count One); and (2) on or about October 16, 2018, JUSTIN RILEY BRAFFORD, within the special aircraft jurisdiction of the United States committed Simple Assault, in violation of Title 46, United States Code, Sections 46501 and 46506 and Title 18, United States Code, Section 113(a)(5) (Count Two).

*Continuing affidavit of Agent Price as to Defendant Justin Riley Brafford.* KBM

FURTHER AFFIANT SAYETH NOT.

_____
Dannie W. Price, Jr.
Special Agent, FBI


SUBSCRIBED AND SWORN TO BEFORE ME
THIS 17th DAY OF OCTOBER, 2018

_____
United States Magistrate Judge

7